BAILES, Judge Pro Tem.
The plaintiff, State of Louisiana, through the Department of Highways, filed expropriation proceedings for the taking of the hereinafter described property for highway construction and improvement purposes under the provisions of LSA-R.S. 48:441 et seq. All suits involve the same parties, both plaintiff and defendant.[1]
These appeals involve only the question of severance damages. Seven separate tracts of land were involved in the taking. The remainders of the taking of these seven parcels of land were found by the district court to have suffered severance damages. These parcels are described and hereinafter referred to as 1, 2, 3-23, 5 — 1, 5 — 6, 5-7 and 43. The trial court awarded severance damages resulting to the remainder left from the taking of Parcel 3-23 in the amount of $5,900; and to the respective remainders for the taking of Parcels 1, 2, 5-1, 5-6, 5-7 and 43 in the amount of $6,790. The award of severance damages associated with Parcel 3-23 was broken down as follows: 24.4 acres on the west side of Highway 1-59, $4,880, and for 1.7 acres on the east side of Highway 1-59, $1,020. The award of $6,790 associated with Parcels 1, 2, 5-1, 5-6, 5-7 and 43 was divided by the trial court as $3,920 for remaining property on the west side of 1-59 and $2,870 attributed to remaining property on the east side of 1-59.
The State has appealed these awards.
Involved herein is the taking of land for the construction of a portion of Highway 1-59 north of Slidell. We find the following description of the parcels involved accurate and quote from the plaintiff’s brief, as follows:
“Parcel 3-23 is located approximately 3 miles north of Slidell. The subject property, as a whole, is considered to be approximately 35 acres and is 7 five-acre tracts subdivided and identified as Oak Ridge Subdivision. [This] subdivision was developed many years ago; however, it was not developed fully and only a portion of the lots are sold. The subject property has very limited access and could be reached only by a small private road leading to the extreme northeast corner of one of the 7 lots. At the present time, the subject property is still remote and inaccessible except by one gravel road leading off of Lincoln Road stopping at approximately the northwest corner of Lot 33.
“The part taken * * * is a 300-foot wide strip running north and south through the lower or east portion of the property. * * * (C)ontained in the total taking is 9.038 acres.
“The property after the taking [is designated] as a large remainder on the west of the taking containing approximately 24.286 acres and a small remainder on the east side of * * * 1.676 acres. This small remainder on the east has been isolated and is without access, detached from the large remainder. The large remainder [24.286 acres] however, enjoys the same position in relation to accessibility as [it] did prior to the taking.”
Parcels 5-1, 5-6 and 5-7 are takings for 1-59 located about one mile north of Parcel 3-23. Parcels 1, 2 and 43 are takings for the purpose of widening what is known as Military Road or State Highway 1090. Parcels 43 and 2 are located on the west side of Military Road and Parcel 1 is on the east side thereof. At the location Parcels 5-1, 5-6 and 5-7 (taken for 1-59) and Parcels 1, 2 and 43 (taken for State Route 1090) Highways 1-59 and 1090 are about one-eighth mile apart, the latter lying to the east of the former. The accompanying plats more clearly located these parcels.

*695

*696 All parcels are located about 4% miles north of Slidell and were taken from a tract of about 49 acres fronting on the west side of State Highway 1090. Parcel 1 is located on the east side of State Highway 1090. The land is relatively level, with some woods and part in pasture. On this tract is located a large residence and swimming pool. Additional improvements consist of a smaller frame residence on piers, with asbestos siding and composition roof, a 30 x 50 barn, and another barn 18 x 30 with hayloft and a shed-type building of the same size, and fencing.
Parcels 5-1, 5-6 and 5-7, collectively consists of a strip running north and south having a total area of 8.838 acres. The extreme eastern edge of the taking is in excess of 600 feet from Military Road (1090) or the front of the property and approximately 350 feet from the main residence and 175 feet from the small secondary residence and 350 feet from the swimming pool. These parcels were required for the construction of 1-59.
The property after the taking has two remainders. The east remainder which will be the area continuing to front along Louisiana 1090 contains approximately 2*4 acres with all the major described improvements with the exception of the barn with loft and shed. The second remainder is on the west of the part taken and contains approximately 19Í4 acres. This remainder, which was rear land before the taking, now fronts along a completed service road running along the entire 1,156 foot width of the property. This service road is reached by Louisiana 1090 leading from Slidell. This places the west remainder in closer proximity to Slidell.
“Parcels 1 and 2 are on either side of Old Military Road, Louisiana 1090, north of Slidell, Louisiana. At the time of plaintiff’s appraisals, Military Road was a gravel road with open ditches and the property on the east side of the road was fenced with a mesh irire and barbed wire fencing on wooden posts. The property on the west side of the road was not enclosed. Both sites are flat in elevation and cleared land. The parcels taken are strips across the front of the properties. On Parcel # 1, the taking at the north end is a point and it widens out at the south end to 20.73 feet by a distance of 843.85 feet and contains 0.366 acres. * * *.
“Parcel 2 is on the west side of the road; the taking'is 15.74 feet at the north end and 15.76 feet at the south end by a distance of 683.92 feet and contains 0.241 acres. * * *.
“Parcel 43 is south of Parcels 1 and 2. It is improved with a two-story frame and plaster dwelling, a swimming pool and other outbuildings. The part taken is a strip across the entire front of the property measuring 15.76 feet at the north end and 16.32 feet at the south end. The only improvements contained on this part taken is an old ranch type frame fence and a portion of the driveway. * *
The plaintiff’s appraisers were Mr. Henry B. Breeding, Jr., and Mr. Ward J. Deano, both residents of St. Tammany Parish where they are actively engaged as realtors and appraisers. The defendant’s appraisers were Mr. Theodore M. Wilkes, who has been employed part time in this occupation for the past two years, and Mr. Kermit A. Williams, a realtor and appraiser. Both Mr. Wilkes and Mr. Williams reside in Baton Rouge.
In its brief, the State contends the trial court committed error in the following respects :
1. In awarding severance damages for consequential inconvenience which did not diminish the value of the remainder; and
2. In awarding severance damages based entirely on the unsupported opinion of defendant’s appraisers and disregarding the testimony of the State’s appraisers whose opinions were based on comparables *697 to establish the before and after values of the property.
The trial court rendered written reasons for its judgment. We quote the pertinent part of these reasons, as follows:
* * *
“This Court will rely primarily on the testimony of Mr. Kermit A. Williams, expert realtor and appraiser for the conclusions expressed here.

"SUIT NO. 18,397

« * ‡ *
“Parcel 3-23 (* * *) involved the taking of 9.038 acres out of a 35 acre tract which was actually seven 5-acre tracts subdivided into Oak Ridge Subdivision. Mr. Breeding valued it at $350.00 per acre; Mr. Deano at $400.00 per acre. The Court accepts Mr. Williams’ figure of $700.00 per acre for a value of $6,327.00 for the 9.038 acres taken.
“The remainder east of Interstate Highway 59 was 1.7 acres. Mr. Breeding and Mr. Deano found severance damages to this tract of $419.00 and $570.00 respectively. Mr. Williams’ figure was $1,020.00, which the Court accepts.
“The remainder west of the Interstate 59 Highway consisted of 24.4 acres. Neither Mr. Breeding nor Mr. Deano found any severance damages here. Mr. Williams found moderate severance damages of $200.00 per acre and the Court will allow these in the amount of $4,880.00.

"SUIT NO. 19,012

“Parcel 5-1 involved taking 4.128 acres at $700.00 per acre (Williams’ figure) for $2,890.00.
Parcel 5-6 involved taking 2.47 acres at $700.00 for $1732.00.
Parcel 5-7 involved taking 2.237 acres at $700.00 for $1566.00.
Mr. Deano and Mr. Breeding used $400.-00 per acre but the Court accepts the $700.00 per acre as correct.

"SUITS NOS. 19,763 & 19,877

“Parcel 43 involved .288 acres at $700.00 per acre or $201.60.
Parcel 1 involved .366 acres * * *.
Parcel 2 involved .241 acres * * *.

“Mr. Breeding and Mr. Deano did not allow any severance damages for these parcels; Mr. Wilkes and Mr. Williams did.
“The Court accepts Mr. Williams’ figiire of $3,920.00 damages for the west area remainder,- $2,870.00 for the east remainder.
“Hence for Parcels 5-1, 5-6, 5-7, 43, 1 and 2, * * * the severance damages are $6,790.00 * * *
As stated by the trial court, it relied mainly on the findings of the defendant’s appraiser, Mr. Kermit Williams in determining the quantum of the award of severence damages. It is noted that Mr. Williams testified that he had not made any appraisal prior to this occasion in this area.
The record contains the following quoted testimony of Mr. Williams, to-wit:
“Q. What did you find the severance damages to be in that case ?
“A. The severance damage relating to the larger portion, 24, estimated to be 24.4 acres, I estimated to be damaged approximately $200.00 per acre for a damage figure of $4,880.00. * * *
* * * * * *
“Q. 24.4 is $200 an acre damage ?
“A. That is the amount of damages $4,880.00, and then, there was a small triangular 'piece that would be lying east of the area taken that 1.7 acres, the only access it would *698 have there would be across a very large canal which is along the south edge of the property, and the cost of reaching it in my opinion would almost exceed the value. I have damaged that $600 per acre left a nominal figure in the land that remains.
So that 1.7 acres damaged, $600 per acre, came to $1,020.00.
“Q. That would be the total severance damages in connection with this taking then of how much ?
“A. $5,900 and added to the part taken of $7,013.00, in the two parcels that were taken comes to an estimate of $12,913.00.
On cross-examination by plaintiff’s counsel, Mr. Williams testified:
“Q. Mr. Williams, when is the last time you appraised these remainders?
“A. I looked at them just last week to confirm work I had done earlier. I made no changes to my conclusions last week, but I inspected them just last week.
“Q. As I understand, you did not make an appraisal of the remainders in the light of current market data.
“A. I have no current market sales that would fit the pattern of the remainders, if that is an answer.”
The defendant’s other appraiser, Mr. Theodore M. Wilkes, stated this was the only appraisal he had ever made in the Sli-dell area. His testimony on severance damages follows:
“Q. Did you find any severance damages in connection with this taking?
“A. Yes, sir. The value before the taking of the total acreage, 35.114 acres, had $1,000.00 — At $1,000 per acre, was $35,110.00. The value after the taking, divided as follows: The remainder west of the taking of 24.4 acres which I ascribed a value of $900 per acre, indicated a value of $21,960.00. The remainder east of the taking which was 1.676 acres, I assigned a lump sum value of $250.00, indicating a total value after the taking of $22,210.00. * * *
******
“From the $12,900.00 diminution in value, the value of the part taken at 9.038 acres at $1,000.00 an acre, for which I ascribed a value of $9,040.00 is deducted and this illustrates a severance damages of $3,-860.00.”
There is no opinion expressed by Mr. Wilkes of the severance damage to the triangular shaped 1.7 acres located on the east side of 1-59 cut off from the original tract apart from the total severance damage estimate of $3,860.00.
The plaintiff’s expert, Mr. Breeding, testified:
“Q. Is there any damages done to the remainder ?
“A. Yes, sir. There is a little remainder on the south side of the part taken containing 1.7 acres approximately and it will now be inaccessible and still is today because it has been separated from the parent tract and also- adjoining this property on the south is a subdivision known as Ozone Pines but separating Ozone Pines from that remainder is a major drainage canal and the property is too small to make it feasible to bridge it so the only value you would have would be to the adjoining property owner to the ■ east who may want to add to his land but other than that, it is not very good.
*699 "Q. What do you estimate that to be ?
“A. Well, I figured that the typical adjoining owner would certainly pay one hundred dollars an acre for it so therefore the value, the damage was two hundred fifty dollars per acre, but I estimated that that adjoining property owner or anyone in the market just buying a piece of land for a hundred dollars an acre would buy it.
“Q. Now, the other remainder, which is in the red stripes, which is approximately 24.4 acres, were there any damages done to that ?
“A. No, sir, because that piece of land is basically the same as it was prior. It had the same, it has the same access as it had previous to the taking with the addition that the construction, which is completed stubbed in a service road to the northeast corner of the property.
“Q. It gives it a greater access now?
“A. It has a little more access, I would say, than it had prior. The little dirt road I referred to originally is still existing there which, I believe to be Roosevelt Road.
“Q. Have you arrived at a value of the land as it is today ?
“A. Yes, sir.
“Q. What would that value be ?
“A. The 24.4 acres remaining on the west side, I believe, would sell in the market today for one thousand dollars an acre or twenty-four thousand four hundred dollars. As previously stated, the piece on the south or the east would have a value of one hundred dollars an acre or one hundred seventy dollars.
“Q. Now, in arriving at this value, did you use the same comparables that we referred to before, the same ten comparables ?
“A. Yes, sir. I analyzed the same ten comparables.
“Q. Is there any one specifically that you would refer to that is more like this property than the others?
“A. “Well, Sale No. 2 which sold for one thousand dollars is a larger tract but it has very limited access from Robert Road so it is similar to the subject remainder in that respect. The access to the comparable 2 may be a little bit better but by the same token the subject remainder is considerably smaller which would be offsetting. That is mainly what influenced me.
“Q. Have you calculated as to what the severance damages were ?
“A. Four hundred nineteen dollars.
THE COURT:
“That is up on the little piece ?
THE WITNESS:
“Yes, sir.
THE COURT:
“That 1.7 acres?
THE WITNESS:
“Yes, sir.
BY MR. LISKA:
“Q. Is that this small piece in red (indicating) ?
“A. Yes, sir.
THE COURT:
“Four hundred nineteen dollars in severance ?
THE WITNESS:
“Yes, sir.
THE COURT:
“Now, on the other remainder you don’t find severance ?
THE WITNESS:
“No, sir. It still has the same access.”
*700 The plaintiffs other expert appraiser, Mr. Deano, by the use of practically the same comparables as used by Mr. Breeding, found this parcel had a value at the time of taking of $400 per acre, but at the time of the trial over ten years later the 24.4 acres of the remainder located on the west side of 1-59 had a value based on these comparables of $750 per acre. In considering severance damages to the triangular shaped 1.7 acres located on the east side of 1-59 because of its inaccessibility and the low or depressed nature of the ground had a total value of $100, which reflects a difference of $580 between the before taking value and the after taking value. His conclusion was that the 24.4 acres remaining on the west side of 1-59 suffered no damages and that the 1.7 acres remaining on the east side of I-59 did have severance damages.
Now considering Parcels 5-1, 5-6, 5-7, 1, 2 and 43, the trial court, along with the defendant’s appraisers, considered these six parcels as a unit in fixing severance damages.
As shown by the trial court’s written reasons for judgment, the findings of the trial court of severance damages were based on the following testimony of Mr. Kermit Williams:
“Q. Okay. With reference to severance damages, what did you find?
“A. Yes, sir. It was my opinion that the west area of the property which is at the top of that map, which contains 19.6 acres, was damaged approximately $200.00 per acre, so that the damage is estimated to be $3,920.00.
Now, the east remainder, I felt that was damaged because of severance, from the larger portion of the tract, and exposure to the interstate, but I thought the damage was less. It contains 20.5 acres, and I have it damaged at $140.00 per acre, which is 20% damage figure or an indicated damage of $2,870.00 for a total estimate of damages of $6,790.00.
Mr. Wilkes’ testimony on the question of severance damages to these parcels follows :
“Q. Did you find any severance damages in connection with these takings?
“A. -Yes, sir. The value before was 58.183 acres at $1,000.00 an acre, totalling $58,180.00.
“Q. Excuse me just a minute now. You are including within that 58 acres—
“A. All of the parcels.
“Q. All of the parcels out of which— All of the tracts out of which these five or six parcels came ?
“A. Yes, sir. Because of the unity of ownership and unity of use was taken.
In other words, prior to the taking, this was all one big tract of land? ¡ó
For all practical purposes, yes, sir. >
Proceed. ¡ó
The value after, the value ascribed parcel 5-1, which was a — Contains after the taking 19.15 acres, a value of $700.00 was ascribed to this parcel, indicating a value of $13,650.00. >
Parcel '5-6 was 1.5 remainder at $800.00 per acre, indicating a value of $9,200.00. 5-7 was a 9 acre remainder, and the value was ascribed to that as $800.00 per acre, indicating a value of $7,200.00, and east of the Military Road was an 8 acre parcel, which was valued at $1,000.00 per acre, or $8,000.00, indicating a total value after the taking of $38,050.00.
That is illustrating a diminution in value, a total of $20,130.00, which was divided between the part taken, which had a value of $10,183, deducting that from the total diminu *701 tion indicates the severance damage of $9,947.00.
“Q, Now, that figure, would you attribute to all of the takings in connection with that big tract ? Is that correct ?
“A. Out of the smaller takings, I did not ascribe any severance damage. The takings of which I ascribed major damage was severance between 5-1 and 5-6 and 5-7.
“Q. That would be the interstate highway, itself ?
“A. Yes, sir.
“Q. Where it split the tract?
“A. Yes, sir.”
Plaintiff’s expert, Mr. Breeding testified that there was no severance damages to any of these parcels. Specifically, he testified that parcels 1, 2 and 43 were extremely narrow strips of land in relation to the depth of the property and there was no material change in shape or size of the property. Parcel 1 was 844 feet in length along the east side of Military Road with a taking of .366 acre; parcel 2 was 684 feet in length along the west side of the same road with a taking of .241 acre; and parcel 43 was 643 feet in length along the west side of the same road with a taking of .28 acre. The purpose of these takings was to widen Military Road. Mr. Breeding stated that prior to the taking the road was a relatively narrow gravel road and that now, after the taking, it is wider and hard surfaced. It was his opinion that the property at the time of the taking had a value of $1,000 per acre and that the value of the remainder at the time of trial had a value of $2,000 per acre. This opinion is based on comparables No. 9 and 10 with appropriate adjustment.
According to the testimony of Mr. Breeding parcel 5-1 had a remainder of 19.6 acres and this tract is the portion located on the west side of 1-59. Through the adjustmnt of comparables he used, being ten in number, it was his opinion that the property at the time of the taking had a value of $400 per acre. The only improvement was field fencing. The remainder consisted of the rear portion of the larger tract which fronted on Military Road. He found that a service road had been built on the west side of 1-59 giving it very good access.' He opined that it was more valuable at the time of the trial than at the time of the taking. He also found it was closer to Slidell in travel time than it previously had been because of the circuitous route along Military Road.
This witness further stated that parcels 5-6 and 5-7 were taken from the portion of the tract fronting on Military Road on which the improvements are located, namely, the residence and swimming pool both of which are still in location undisturbed. As shown by the accompanying sketch of the property both 5-6 and 5-7 are portions off the rear of the front property. Mr. Breeding .used the ten comparables in arriving at the trial date value. He found the market was strong on that date for tracts of land of the 5, 10 and 15 acre size, and that such acreage was selling for upward to $2,000 per acre. He cited a six-acre tract in this locality which sold for $4,500 per acre, readily acknowledging that it was better located and landscaped.
The testimony of Mr. Deano closely parallels the reasons of Mr. Breeding in his finding that no severance damage was inflicted on the remaining property of defendant. No useful purpose would be served in detailing the reasons for his conclusion.
It is worthy to note that plaintiff’s appraisers’ testimony is entitled to greater weight than the appraisers for the defendant. Mr. Breeding and Mr. Deano both are realtors in the locality of the taking. Both have previously appraised property in this area and have followed the market for a number of years. Each of them used likely comparables. We are convinced from their testimony that' unquestionably the property remaining after the taking by the plaintiff has enhanced and improved in *702 value because of the highway program which necessitated the takings. On the other hand, Mr. Williams is a realtor and appraiser primarily engaged in the Baton Rouge area who, according to his testimony, had not previously made an appraisal in the Slidell area. Mr. Wilkes freely stated that he was engaged only part time as an appraiser and was not interested in continuing this type work. He stated his primary function was that of controller from several Baton Rouge firms. He had not been engaged previously in appraisals in this area.
In the case of State, Through the Department of Highways v. Singletary (La.App.1966), 185 So.2d 642, this court stated:
“[1-3] In controversies of this kind, the court must be guided by the testimony of expert witnesses. In determining the amount of damages, whether called severance or consequential, the testimony of the expert appraisers must 'stand the test of reasonableness. Opinion testimony is best based on the experience of the witness related to the particular problem before the court. Opinion testimony of experts who have experience in dealing with real estate within the area in which the subject property is located is entitled to greater weight than the testimony of an expert without such actual and practical experience.”
Aside from the fact that the State’s appraisers were both residents of and active realtors and appraisers in the locality of the subject property, their opinion of value is entitled to greater weight for the reason that their determination is based on compa-rables selected for the purpose of being able to express an opinion on the question of severance damages.
In State Through Dept. of Highways v. Dodge (La.App.1964) 168 So.2d 430, the court stated:
“The rule applicable here is that the testimony of each expert should be considered and given effect if that testimony appears to be well grounded from the standpoint of sincerity and good reasoning. The expert testimony may be disregarded, however, if it impresses the court unfavorably, (citations omitted).”
LSA-R.S. 48:453 provides:
“The market value is determined as in general expropriation suits but as of the time the estimated compensation was deposited in the registry of the court.
“Damage to the remainder of the property is determined as of the date of the trial.
“In either case the defendant has the burden of proving his claim.”
This statute places on the defendant the burden of proving damages to the remainder of the property. This burden has been recognized by innumerable cases in the jurisprudence. We find the trial court committed error in its conclusion that the defendant had sustained the burden of proving damages to the remainder. We consider the testimony of Mr. Breeding and Mr. Deano, based on their appreciation of local conditions and values buttressed by the comparables which they used, is more reasonable and well founded than the mere unsupported conclusion of Mr. Williams. We conclude that the testimony of plaintiff’s experts far outweighs the probative effect of the mere conclusions of defendant’s witnesses, Mr. Wilkes and Mr. Williams.
The testimony of Mr. Breeding shows that he found a difference in before and after values of the 1.7 acres of Parcel 3-23 located east of 1-59 of $419, and for equally good reasons Mr. Deano found a difference in value of $580. Judgment will be rendered against the plaintiff in the amount of $580 for severance damages, and in all other respects the awards of severance damages to the other parcels are reversed.
The records in these consolidated cases shows that a total award for severance damages was $12,690. By subtracting the *703 award of $499.50 from the trial court award of $12,690, there is found an excess award of $12,190.50. The records herein further shows that the plaintiff deposited the awards of the trial court with the Clerk of Court on March 20, 1974.
The plaintiff is entitled to judgment against the defendant in the amount of $12,190.50. Accordingly, there is judgment herein in favor of the State of Louisiana, Through the Department of Highways, and against the defendant, Riverside Realty Company, Inc., in the full sum of $12,190.-50, together with legal interest thereon from the date of withdrawal of the excess deposit until paid to the plaintiff.
Plaintiff is cast for all costs of the district court and of this appeal as permitted under law, and in all other respects the judgments appealed are affirmed.
Amended, and as amended, affirmed.

. All suits bear identical titles, although different numbers. Separate judgments were rendered in each case; however, the trial court awards of severance damages were included in the judgments in suits No. 10,349 and 10,350 on our docket. Plaintiff has appealed all four eases, and all cases have been consolidated herein for the purposes of argument and judgment. Suits No. 10,351 and 10,352 were filed in 1962; all were tried in December, 1972, and the judgments were signed by the trial judge on February 4, 1974.